Case No. 15-5744, Robert McKinney et al. v. Lexington Fayette Urban County et al. For our audience, I ask that you please stand to your sides and remain seated until your name is called. May it please the court, counsel, I'm Bill Rambekeur and I represent a number of individual security guard personnel from the Fayette County Detention Center. That includes Adam Moss, Corporal Laguerre, Corporal Arnold, Regina Powell, and Donald Womack. Barbara Kriz, who is with me in the courtroom but has graciously allowed me to carry the day on the argument, represents two of the other remaining Fayette Urban County security guard personnel. Specifically, she has Randy Jones and Eric Laguerre. This is a case that presents fairly tragic factual circumstances. It's a case where Mr. McKinney, Jeff McKinney, was an inmate at the Fayette County Detention Center, having gone in on May 17th for a two-week stay on a DUI charge. It's a case where Mr. McKinney passed away. To understand the arguments that we're going to be making, I need to go into a little bit of detail about the underlying facts. Where we are today is scaled way back from where we started. There were a slew more individual defendants that were named from the detention center. They were dismissed. We are left now with these five or six individual defendants, all of whom are seeking that this court reverse the decision from the trial court denying their motion for summary judgment on immunity grounds. There were three plaintiffs in this case. The estate of Mr. McKinney, represented by his father. And then he had two former wives, each of whom had minor children. And so those two former wives are named as plaintiffs in this case as well for the benefit of their children. At the time of the events in this case, Mr. McKinney was 37 years old, a young man. He'd had somewhat of a troubled past. He had epilepsy and had been treated for seizures since he was 17 or 18 years old. So he had this seizure disorder. He was being treated for that disorder and for anxiety by a neurologist named Patrick Leong. And he was on certain prescribed medications for the seizure disorder at the time he presented to the detention center. The meds he was on for specifically for the seizure was Keppra and Depakote. Another doctor had prescribed another medication, Ativan, but that was prescribed by Dr. Leong for purposes of treating an anxiety disorder. So the Ativan is what is known as a benzodiapamine drug. And so he presented with those three drugs at the Fayette County Detention Center when he showed up for the first time on the 17th. In addition to the epileptic problem, he also had undergone, he had an accident on an ATV several years before the events in this case and sustained a traumatic brain injury. So he had those types of problems as well. So he was being treated for pain and had a number of other medications, all of which were fully disclosed to the Fayette County Detention Center intake personnel when he presented to the jail. Now, it's also important to note that at the Fayette County Detention Center, they contract directly with a medical service provider. In this instance, it was a company named Corizon. And Corizon, under their contract with the detention center, was responsible for all of the medical needs of the Fayette County Detention Center. On the video, the nurse-type people that we see there and the one that ultimately gives them the shot, are they all Corivan or whatever? All Corizon employees, yes, Your Honor. And it's important, again, because Corizon, it's very clear from all the testimony from everybody in this case, is that the Corizon personnel make all the medical determinations. That's what they're there for. The guards are just that. They're guards. They are there for care, custody, control types of situations. They are security personnel. They are not doctors. Don't the medical personnel defer to the guards if the guards are suggesting that there's a security issue? You're not saying that the medical personnel would try to stop the guards from restraining someone if the guards felt they needed to be restrained, are you? Not at all, Your Honor. I'm not suggesting that. I guess what I'm suggesting is the decision of the officers that's at issue here, not the decision of the medical personnel when the issue was restraining the person, correct? Well, it goes to the argument from the other side, which is that we used excessive force and did all these bad things. While all these nurses are sitting there. I know, but my point is, don't you agree that the nurses would not intervene? I watched the video as well. They did not intervene. The nurses stepped back, and they did not intervene when the security guard personnel were doing what they felt they needed to do in order to restrain a combative inmate. So certainly they're not going to intervene in that. And what happened in this case was that Mr. McKinney, he was there from the 17th on. The nursing staff put him on a benzo withdrawal program, so the Ativan was toned down for him and then eliminated. And by May 21st, the day before all this happened, he was off of the Ativan. Again, Ativan can be used for seizure medications as well, but it's primarily an anti-anxiety drug. So the withdrawal from Ativan, all of those medical decisions were made by the Khorasan medical personnel. So on May 22, within a day of his being withdrawn from the Ativan, Mr. McKinney suffers the first seizure at about 1230 or so, 1240 in the afternoon. He's in the shower in what was then Unit A of the detention center, which is a general population area. He had been initially placed in the medical unit, which is Unit C, and then had been released the day before. If we can cut to the chase, the argument here seems to be about what actually happened, what you see on the video, which is an awful lot of helter-skelter, but kind of give us your actual argument, which says no matter how you read the video, the officers were fully justified in using the degree of force that they did, and presumably in dealing with him rather than letting the nurses deal with him. Can you give us the argument of why that's the case? The first prong of that argument is that they utilized the force that they believed was necessary under the circumstances. The video shows what the video shows. There's no disputing what's on that video. We're not disputing those facts at all. The deposition testimony of the officers is, we believe, critical, and this is what the trial court, Judge Caldwell, did not address. Let me ask you about what Judge Caldwell addressed then, because I take your argument, and I'm looking at your argument. There's basically five people that are at issue. Correct. You go through each one. There's Moss and Laguerre, and in each argument you basically say there's no basis to find that, for instance here, Laguerre should have been aware of a substantial risk of serious harm to McKinney, and in Moss you say there's no basis to find that Moss should have been aware of a substantial risk of serious harm to McKinney, and so on. I mean, I believe here it is Jones. There's no evidence that Jones was aware of facts from which an inference could be drawn that there was a substantial risk of harm, and the same for the other two. Judge Caldwell disagreed with that, right, said there was a basis to find those facts. Is that right? That's correct, Your Honor. So you're challenging her determination that there's enough to get to the jury on those factual issues. Is that correct? Is that correct or not? That's not entirely correct, Your Honor. Well, it's incorrect about that because it seems to be what you say over and over. Well, certainly that is what we are arguing. We disagree fundamentally with her ruling in that regard. However... But do you concede that your disagreement is not properly before us on those issues? I agree with that, Your Honor. And it seems to be that's what you're arguing. I'm looking at the summary of your argument. The summary of the argument has three paragraphs. Only the first one deals with these five federal claims, right? Correct. It just says, It is clear that plaintiffs have failed to raise a material issue of fact. There is insufficient evidence on which a reasonable fact finder concludes that defendants had sufficient knowledge and actually drew the inference. Inadequate proof to support a finding. Those are facts. So I'm reading your summary to say we're challenging the district court's determination as to whether there are enough facts to get to a jury on these issues. Well, Your Honor, what her... Am I reading it wrong? Well, no. You're reading it correctly. But what Judge Caldwell did here or failed to do here more aptly is that she based her rulings on basically the review of the video, okay, without looking to the deposition testimony of these officers about their objective and subjective. When you make that kind of error, it's reviewable, but not on an interlocutory basis. But what she did, she's required. Is that true? She is required to do an individualized assessment of these components for each of these individuals. If you go through and say for each one of them she doesn't do it, that's an argument that for each one of them there's not enough fact. I don't see how you can get around that. Your arguments are strong. They just seem to be premature. Well, obviously we think they're strong. We don't think they're premature because immunity, the issue of qualified immunity or official immunity... When there's a legal issue. ...is a legal issue. No, when there's a legal issue. You can have immunity based on factual determinations, or you can say there's no immunity because there isn't enough in the record to support certain facts. The Supreme Court says that's not the basis for interlocutory review, right? That's correct, that's correct. But we believe here... Sir, is the issue of whether or not the court did make an individualized assessment, do you see that as a legal issue that we could address? Yes, I think that is, and I think that that's what she is required to do. In what sense do you say and how do you show and what is the basis for your conclusion that she did not make an individualized assessment? It's based specifically on what she said in her opinion. She deferred ruling on these very issues. No, she didn't say that. She indicated she was going to allow the jury to consider it again and that it would be brought up again. But she clearly did conclude whether she did it individually or not is my question to you, and I'd like to know how do you say that that order was insufficient in assessing on an individual basis the conduct of each officer? Well, the order itself says just that. It says that she's not making this individualized assessment for these individual officers. She's deferring that until trial. And immunity is a immunity from suit. It is not just a defense, and we're saying that these issues, qualified immunity issues and the individualized assessment, that's something that this trial court has to do at this point in time and didn't do. And because of that, we believe Judge Caldwell committed error and that this court, as a matter of its de novo review, can make a couple choices, it seems to me. One would be to reverse and remand it back to Judge Caldwell so that she does in fact make the individualized findings for each of these individual officers that she declined to do. Okay, I'm going to ask you one more time. We have her order here. What is your basis for saying that the order, other than the fact that she said she was going to defer until trial, because I don't see it that way. She said there was a genuine issue of material fact as to each of these officers, and therefore she was going to defer again and allow after more evidence was submitted a determination as to individual assessment. That doesn't mean that that order did not also do that. My question to you is why do you say the order is insufficient to the extent that it did address the conduct of the officers? It addressed the conduct of the officers as a global unit as opposed to individually, number one, and that's what she's required to do for each one of those individual officers. Each one of those is entitled to the court's attention on an individualized basis. Moreover, what we're saying that Judge Caldwell didn't do that we believe she should have done was to have considered the evidence presented in the deposition testimony of all these officers. She cites repeatedly to the deposition testimony, does she not? Well, she does, and some of it she gets wrong, but that's a whole different issue that's not properly before this court. The fact of the matter is that she didn't, in her opinion, go down and review the testimony that we've submitted through our submissions to this court. She didn't look at any of the deposition testimony and quote from that in any type of individualized assessment. We believe that that's what she was required to do. Thank you, counsel. No further questions? Thank you. Thank you. May it please the court, Mr. Ramkeur, Ms. Kriz, Richard Garneri, representing all of the appellees, got my co-counsel with me, but they've graciously agreed to allow me to do all of the arguing today. Judge Rogers really got to the heart of the matter in that really what the issue is before this court is the jurisdictional issue. And that is they made a motion for summary judgment based upon qualified immunity. Judge Caldwell decided there were factual issues that needed to be resolved by the jury. They didn't like that ruling. They have filed an interlocutory appeal. Of course, when they file an interlocutory appeal on the denial of a motion for summary judgment on qualified immunity under the collateral order doctrine, the only issues that this court has jurisdiction to review are abstract questions of law. An abstract question of law as to whether the district court made an individual determination as opposed to a global determination? I don't think it is, Judge. Assuming that it is in some sense a legal issue, how do you respond to it? Well, it requires the court to make determinations as to who did what at what time. So I think from that standpoint, it is a sufficiency of the evidence argument. In fact, I would cite to the case of, and actually it's an opinion that you authored, it's McGraw versus Madison Township. And in that case, Judge, there were three police officers that it was a 1983 action. There were allegations of false arrest, false imprisonment, and excessive force. And they argued, they made a motion for summary judgment on sovereign immunity. The trial court denied it. They did an interlocutory appeal. And in your opinion, you indicate that the three officers argued the district court failed to consider each officer's liability individually and that the district, had the district court done so, the court would have found that there was no evidence that certain of the officers were involved in certain of the counts of the complaint. I think since that case, as wise as it may have been, there have been published cases that have focused more on this idea that an individual determination is necessary. Assume for the moment that we can look at that issue. Is it true, as Judge Berg suggests, that there's enough in there, in her opinion, that deals with these five people sufficiently specifically to meet the requirements that we have for an individual determination? If we assume that this court has jurisdiction over the individualized assessment argument, that it is an abstract question of all. That argument, not to say each individualized assessment we can go through. Then the question becomes, did she do an individualized assessment? Right. And I think by looking at it, and Judge Berg hit the nail on the head, you've got a 27-page opinion that goes into great detail about what all of these five guards did throughout the course of this event. This event basically was a 45-minute situation that started at 6.19 p.m. and ended a little bit after 7 o'clock when they carted his body out of the detention center. All five of these guards were present during the entire episode. It wasn't like they were there for part of it and not there for other parts of it. I take your argument, I infer your argument to be that if she talks about all the five people and then at some point says, all five of them failed to act while they were standing there, she doesn't have to go through and say, all five, I mean Moss, LaGear, and name each one. Exactly. I don't think she needed to have a subsection of each section of her opinion that says, LaGear did this, Jones did this, because you can see from her opinion, she recognized that all of them did all of it. There's the case of Phillips v. All of them do everything. All of them participated. Some of the things she says they did, they all did. Yes, they all participated. They were more than just mere observers. They were all actively. The it that they did was to deal with him forcefully rather than leaving him on the floor to flail around? That's not the question I'm putting in terms of the qualified immunity standard. Could any reasonable officer have believed that what they were doing was constitutional? Granting the facts that collectively they manhandled him isn't collectively the original question was, should they have applied force? Should they have just left him or left him to the devices of the medical staff? I guess my viewing of the video, at least, was it didn't look like the nurses were probably going to go in and deal with him if he's in this frothing, flailing condition. Maybe that's a factual question, but just generically, is it your view that they violated the Constitution as soon as they started applying force to him? It's our view that they violated the Constitution from the time that they first went into A-9, which is where he was when he had the seizure. Throughout the time they took him out and put him in the restraint chair in the Commons area, and at the end when they moved him into the individual room. That would be a legal question, wouldn't it? Because you just said that we don't have to get into the details of who struck John at what point, that they were violating his constitutional rights as soon as they went in and got at him, right? Correct, and if the appellants were saying, we concede every single fact that the plaintiffs have alleged in this case, then it does become purely a question of law for this court to say, okay, based upon all of those undisputed facts... pepper spray, none of that, right? Correct. We've basically got two claims. One is that they were deliberately indifferent to his medical needs, and then secondly, that they have applied excessive force. Deliberate indifference. I mean, let's say they aren't the medical personnel. Their deliberate indifference would have to consist pretty much solely of getting in there and interfering, in effect. Interfering, and not only interfering, but actually taking positive action to create the situation that resulted in his death. Correct me if I'm wrong on this. I didn't see anything where they were affirmatively directing the medical staff. If anything, there's some points from the video where it looks like they're looking around, kind of saying, where is the medical staff? And when the woman finally shows up with the Ativan, that's a couple of minutes after things have calmed down. Now, that may just be an inference, but there's no indication that they said, we think this guy's okay, you folks stay away. Well, there are two things, I think. First, and I think you can see from the video, the officers were clearly in charge of the entire situation. The nursing staff was not telling the officers what to do at any point, and you can see from the body language and the comments that are being made, that Lieutenant Jones is in charge of the entire situation. None of those nurses were going to tell Lieutenant Jones what to do and what not to do. And then secondarily to that, once the signal seven was toned, it started out with a code 100, which is medical emergency, but then after the scuffle started in A9, there was what's called a signal seven that was toned. Once the signal seven was toned, under the internal policies and rules of the jail, the medical staff had an obligation to stand down and to simply await further direction and instruction from the guards. I took from the district court's opinion that she was relying primarily on these long periods of time when he was just bound, but nothing was being done. It was like a nine-minute period and then a subsequent period. Is that accurate? I think that she did focus a lot on that, but I think if you look at the... She focuses on that issue here, really. Right, yes. As if she made certain kind of factual determinations, then you could have a legal issue as to whether those factual assumptions amounted to a violation of constitutional law. Yes. But I think she makes findings that start at the very beginning where she said that he... I guess what I'm saying is I'm not sure you even have to go there. Why can't you just focus on the things she focused on? You still win, don't you? Correct. Yes, sir. I think that really, and it gets back to the issue... Those determinations, even if they're wrong and even if there's not enough to get to a jury on those determinations, they're her determinations that at this stage were bound by, that he was just locked up and no medical treatment was requested for him for whatever it was, nine minutes at a time, and those five officers were standing there when that happened, and each one of them should have known. All of that may be false, but it's all stuff that she says there's enough to get to a jury on. Right. She was the one that made the determination based upon the review of the record. They are basically arguing, well, we don't like her version of the facts. We like our version of the facts. And, in fact, in their brief, they... And, again, it's like I was pointing out to Judge Boggs. As long as they're willing to concede all of her facts, we're okay. But they're not willing to concede all of her facts. And if you look at their brief, they drift away from conceding her facts and get into their own version of the facts. There are several different things that they put into their brief that are contrary to what she found and really contrary to evidence that's in the record that supports our position. Besides, she didn't make findings. She just made determinations that a jury could find. That a jury could, that there was enough evidence to where it was a jury question. Yes, sir. And that's why you think this is not properly before the court, correct? Yes, because it was a... Because their argument basically is the sufficiency of the evidence argument. Okay, but that question of the individualized assessment of the evidence, though, I thought I understood you to say that you still felt that that was somehow a factual question. But isn't that really a legal question, whether she did or did not do an individualized assessment in this case? I mean, I think that that's arguable. Well, let's say that it is. Then what do you believe the proper standard of review is that we should apply to the court's opinion when we look at it? On the issue of whether she did an individualized assessment? Yes, whether it was adequate. I think what you need to do is look at her opinion and look at the case law that gives you instruction and guidance on what it is that the district court is supposed to do. And the best case on this is Phillips v. Rowan County, which is a case a lot like our case. There were, I think, 17 or 18 guards that were sued. A woman died while she was in custody. The district judge in that case wrote an opinion a lot like the opinion in our case. She talked generally, or the judge talked generally about the guards were aware of this, the guards were aware of that. And the Sixth Circuit in Phillips v. Rowan County said that that is sufficient as long as the district court found and made the determination that all of these guards were in a position to where they were actively involved, were able to observe what was going on, were participants in the entire matter, that you don't have to go, like Judge Rogers says, you don't have to go into each specific officer and say, Officer A did A, B, and C, Officer B did A, B, and C. I don't think you need to go that far. Again, if you look at her opinion, 27 pages, she goes into great detail about things that Jones did, things that Elko did, things that Laguerre did, things that Moss did, things that Womack did. She clearly ties them all into the situation. You can see in the video they're all actively involved. Part of my question, though, is if you look at it on a continuum and you could say, in one case where a district judge failed to make any individualized assessment and it was very difficult to tell what the judge was, why the judge was saying what the judge said, and on the other hand a very detailed and particularized analysis of the conduct of each officer, this falls somewhere in the middle. What standard do we apply to determine whether this is sufficient? I don't think it falls in the middle. I think it falls much closer to the second scenario that you're talking about. The cases like Stoudemire v. Department of Corrections, Booker v. La Paglia, Krukko v. Franklin County, Arnold v. the Lexington-Fayette-Urban County Government, those were all cases where the district judge had no discussion at all about particular defendants, no mention of the facts with regard to particular defendants, no findings as to the knowledge or the awareness of particular defendants. Those cases are completely different from our case. Then you've got on the other end, you've got Phillips v. Rowan County, which I think is the case that is a lot like our case, where the court went into detail but didn't articulate each individual defendant's particular role, but did enough to where she clearly found that there was sufficient amount of evidence to tie each and every one of the five defendants into the basis of what was going on. Counsel, could I ask a technical question about Arnold and Powell? Did you waive your claims against those two people? I was going to clarify that, Judge. This case started out with we sued a lot of people because we didn't know who was doing what. As the case has gone forward, we're really only pursuing now at this point, and I think Arnold and Powell may have fallen through the cracks with Judge Caldwell. It's Jones, Elko, Moss, Laguerre, and Womack. Those are the five. As far as I understand, I appreciate that's clear. How should we clear that up? Do we have to reverse with respect to those two people because the district judge inadvertently didn't? Is it okay with you if whatever else we do on those five that we just reverse? Reverse or remand to Judge Caldwell for dismissal on the basis that the parties... So you're not objecting to a limited reversal with respect to those two? And just for my knowledge, what's the state of the medical defendants? Did they simply not try to take an interlocutory appeal or they couldn't? They didn't file an interlocutory appeal. So they're still in the case? Yes, sir. The case is sitting in abeyance. Okay. Thank you. Any time for rebuttal? Didn't hear him. Go ahead. I'm sorry, Your Honor. I mentioned it to her. You're likely to mention it when I got up here. To go back to some of the questions raised, I'm referring now directly to Judge Caldwell's memorandum of opinion and order. On page 19, she says, Accordingly, in viewing the evidence in light most favorable to plaintiffs, a fact finder may infer that the defendant officers met the subjective and objective Hudson standards for excessive force, but the court will defer ruling on whether a particular defendant officer may invoke qualified immunity until the evidence at trial establishes the amount of force used by each defendant officer at each particular time and the defendant officer's rationale for applying force at that time. So she deferred until trial. And what we were respectfully submitting was that all of this information was covered in depth in the depositions of these officers. And she didn't address any of that. She based her ruling almost exclusively, as we read it, even though she does refer through her memorandum to deposition testimony, she didn't get into that issue here. I thought you were about to say she relied mainly on the video or something. Isn't it a commonplace that we get qualified immunity appeals and we deny them sometimes and say, and in fact they do, a motion for qualified immunity is renewed after more discovery or even after trial because although there was a genuine issue of fact or the judge said there was a genuine issue of fact based on what happened up until the summary judgment denial, then when more facts are developed, it turns out that Officer A or B had a better defense than she thought. So why is this different from what happens in what I call a number of cases that we've had? Well, it's different because, at least from our standpoint, there needs to be an individualized assessment, and that, again, didn't happen here. And what she was basing her— It's going to be reversed on the basis of that sentence. It's going to deter judges in the future from stating things that are just true. I mean, she could rule later on the basis of further evidence that there was qualified immunity, and that would be to the benefit of clients like yours. But we say don't be saying stuff like that because you'll get reversed. It's sort of a huge kind of thing. Do you see what I'm saying? I understand, Your Honor, and you want the district courts, trial courts, to— To know that they can do this later on with more evidence, right? And certainly, I guess the fundamental problem I have is that, A, we're accepting their version of the evidence as being true, but, B, there just wasn't enough evidence, we don't think, in the record. Again, this court may disagree. But when you say there's not enough evidence in the record, that's the issue. We don't get—see, that's the problem. It seems like it reverts always back to whether there's enough evidence in the record. That's explicitly what we're not supposed to review. Well, I guess, for instance, the Khorasan medical folks were there. You see them on the video, if you've watched the video, and I think you have. They're there throughout. And if this was a situation where the guards were being, for instance, deliberately indifferent to his medical needs, as they claim, and that this was obvious, it wasn't obvious to the nurses because at no point in time during any of this did they come up and say, Stop doing that, or we need to do X, Y, and Z. That didn't happen. They're certainly not going to do that in the middle of the fight. I would say, again, just as one who watched it, that the question occurs once he's in the chair and he's somewhat calmer, kind of, what's happening? Why are the nurses not in there? And maybe the officers told them to stand away, maybe they didn't. We don't know that. Those seem to be potentially factual questions. You said the nurses didn't say X, and you're probably right, but we don't know. I am right, Your Honor, and the reason I'm right is because it was covered in all of the depositions. Every single witness, the nurses included, said they were not instructed not to do anything. Moreover, Mr. Guarneri referenced some sort of policy that required the nurses to stand down, and that's simply incorrect. There was no such policy. If there was a medical issue, they were entitled to do whatever they need to do. There is no policy that says you can't. Now, as a practical matter, as Your Honor noted, it's highly unlikely that a medical staff member is going to intervene when the officers are in the process of restraining somebody. But here, once he was restrained, he was sitting in that restraint chair for 15, 20 minutes. And all throughout most of that time period, they had not yet signaled off either the Code 100, which is a medical emergency, or the Tone 7, which is Officer Needs Assistance. But yet the nurses, at some point while he's sitting there, you do see them come over and inject a shot of Ativan. That's in the video. It is quite a while, as I said. Just me watching, it looks to me like the officers are kind of looking around, you know, hey, what's going on? But do they say we told them something, we didn't tell them something? The nurses uniformly say they were not told not to provide. And the officers say we asked them to come in or we didn't ask them to come in? No, there's clearly no testimony from any of the officers that they told them or asked them not to intervene. I understand that, but I asked you the question. Yeah, I know, and I'm trying to think of what all the testimony was. I don't believe that there is any evidence that they asked the nurses to come over and do what they're supposed to do. They relied on the nurses to make those medical calls. Any other questions? Thank you. Thank you, Counsel. Thank you. These will be submitted.